**Mitchell H. Shen, Esq. (CBN 297566)**
**Law Office of Mitchell H. Shen & Associates**
**617 W. 7th St., Ste. 500**
**Los Angeles, CA 90017**
**Tel (213) 878-0333; Fax (213) 402-2169**
**Email: MshenLaw@ gmail.com**

**Attorney for Petitioner**

**UNITED STATES DISTRICT COURT**
**EASTERN DIVISION OF THE**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUNXIU CHEN**<br><br>Petitioner,<br>v.<br><br>**Warden,** ***Adelanto ICE Processing Center;***<br>**Ernesto Santacruz,** ***Field Office Director, U.S. Immigration and Customs Enforcement;***<br>**Dave Venturella,** ***Acting Director, U.S. Immigration and Customs Enforcement;***<br>**Markwayne Mullin,** ***Secretary of United States Department of Homeland Security***<br>**Todd Blanche,** ***Attorney General of the United States,*** **in their official capacities,**<br><br>Respondents. | Case No. ______________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Expedited Hearing Requested |

## INTRODUCTION

1. PETITIONER/PLAINTIFF, LUNXIU CHEN ("Petitioner" or "Mr. Chen"), by and through his undersigned counsel, hereby petitions this Honorable Court to issue a writ of habeas corpus to order his immediate release from custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS-ICE"), as his

continued detention is a violation of due process and constitutes an unlawful detention as he was detained without a warrant at his Asylum interview with USCIS. In support of this petition, the Petitioner states by and through counsel as follows:

## JURISDICTION

2. This action arises under the Constitution, the Immigration & Nationality Act of 1990, as amended ("INA"), 8 U.S.C. §1101 et seq., and the APA, 5 U.S.C. §701 et seq. This Court has habeas jurisdiction pursuant to 28 U.S.C. §2241, Art. 1, §9, Cl. 2 of the United States Constitution (the "Suspension Clause"), and the common law. This Court may also exercise jurisdiction pursuant to 28 U.S.C. §1331 and may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., and the All Writs Act, 28 U.S.C. §1651.
3. On May 11, 2005, Congress passed the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. The REAL ID Act divested federal district courts of jurisdiction to review final orders of deportation, exclusion, and/or removal. However, federal district courts still retain jurisdiction through habeas corpus over the detention of aliens through habeas corpus.

## VENUE

4. Venue lies in the United States District Court for the Central District of California, the judicial district of confinement, as the petitioner is physically being held in custody at the Adelanto ICE Processing Center located in Adelanto, CA. ***See* Exhibit A: ICE Detainee Locator, Showing Petitioner's Current Location.** This is in accordance with the decision of the United States Supreme Court in Rumsfeld v. Padilla, 124 S.Ct. 2711, 2725 (2004) ("Whenever a §2241 habeas petitioner seeks to challenge his present physical custody

within the United States, he should name his warden as respondent and file the petition in the district of confinement").

**<u>REQUIREMENTS OF 28 U.S.C. § 2243</u>**

5. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." <u>Id.</u> (emphasis added).

6. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." <u>Fay v. Noia</u>, 372 U.S. 391, 400 (1963) (emphasis added).

**<u>EXHAUSTION OF REMEDIES</u>**

7. There is no statutory exhaustion requirement under 28 U.S.C. § 2241. However, the Court may require prudential exhaustion. Courts may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." <u>Laing v. Ashcroft</u>, 370 F.3d 994, 1000 (9th Cir. 2004) (*quoting* <u>S.E.C. v. G.C. George Sec., Inc.</u>, 637 F.2d 685, 688 (9th Cir. 1981)).

8. As applicable here, "[t]he general administrative-law rule is that '[f]ailure to pursue administrative remedies will be excused for futility only upon a showing that an adverse decision was a certainty'—or, in other words, that seeking relief from the agency would

have been truly futile." Vasquez-Rodriguez v. Garland, 7 F.4th 888 (9th Cir. 2021).

9. Furthermore, the Ninth Circuit has interpreted the futility exception to encompass instances "[w]here the agency's position 'appears already set' and recourse to administrative remedies is 'very likely' futile, [thus] exhaustion is not required." Id.

10. Finally, in the context of constitutional challenges, said challenges do not require a Petitioner to exhaust administrative remedies. Wang v. Reno, 81 F.3d 808, 814 (9th Cir. 1996); *see also* Iraheta-Martinez v. Garland, 12 F.4th 942, 949 (9th Cir. 2021) (*quoting* Sola v. Holder, 720 F.3d 1135, 1135 (9th Cir. 2013) (recognizing that an exception to the exhaustion requirement has been carved out for constitutional challenges).

11. In detention cases, appeals to the Board of Immigration Appeals ("BIA") can take months or years. Thus, requiring habeas petitioners to appeal to the BIA to prudentially exhaust is not efficient, would cause irreparable harm by continuing to deprive a person of their liberty, and/or would be futile. *See* Id.; Velasquez v. Bondi, No. 26-cv-01759-GPC-DDL, 2026 LX 178948 at *8 n.2 (S.D. Cal. Apr. 16, 2026) (finding statistics that the BIA traditionally agrees with DHS in 97% of cases ruling against the immigrant).

12. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

13. Furthermore, even though Mr. Chen has filed a bond re-determination request with the IJ; based on changes, as discussed *infra*, his bond will be denied, and he will not have a constitutionally adequate bond hearing. Mubanga v. Mullin, 837 F. Supp. 3d 1160 (S.D. Cal. 2026). Thus, requiring Petitioner to file an appeal with the BIA, the same agency that traditionally agrees with DHS in 97% of cases, is futile.

14. Furthermore, while Petitioner is detained, his removal proceedings proceed in an expedited

manner to order deportation before release, such that he is no longer eligible for bond post-removal order.

15. Petitioner is currently in removal proceedings, so there is no possibility of removal in the near future. **Exhibit B: Notice to Appear.** The federal district court retains authority to grant release on bond or any other condition of release.

## PARTIES

16. Petitioner, Lunxiu Chen, is a native and citizen of China who has been held in detention by DHS-ICE since approximately September 24, 2026. He is currently detained at the Adelanto ICE Processing Center in Adelanto, CA.

17. Respondent, Warden of the Adelanto ICE Processing Center, is sued in their official capacity. The warden has chief executive authority over the administration of the Adelanto ICE Processing Center. In this capacity, they have direct responsibility for the confinement of Petitioner.

18. Respondent, Ernesto Santacruz, is sued in his official capacity as the Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement. Respondent Santacruz is a legal custodian of Petitioner and has the authority to release him.

19. Respondent, Dave Venturella, is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has the authority to release him.

20. Respondent, Markwayne Mullin, is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency

responsible for Petitioner's continued detention. Respondent Mullin is a legal custodian of Petitioner.

21. Respondent, Todd Blanche, is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## LEGAL FRAMEWORK

### A. Petitioner's detention under 8 U.S.C. § 1226(a) requires a warrant absent a particularized showing that the individual is likely to escape before a warrant can be obtained.

22. Under the Fourth Amendment of the United States Constitution and controlling federal statutes, ICE and other federal immigration officers are strictly prohibited from conducting warrantless arrests unless they meet specific, narrow statutory criteria or establish recognized exceptions to the warrant requirement. U.S. Const. amend. IV.; 8 U.S.C. § 1357.

23. For an immigration arrest to comply with the Fourth Amendment, DHS must possess a valid administrative arrest warrant **at the time of arrest** unless, before making the arrest, the officer has probable cause to believe both that the person is unlawfully present and that the person is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357; Arizona v. United States, 567 U.S. 387, 408 (2012). The Immigration and Nationality Act ("INA") specifically indicates that an immigration officer may arrest an alien in the United States without a warrant **only if** the officer has reason to believe that the person is in the United States in violation of immigration law and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. §1357. DHS's implementing regulation likewise provides

that [a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained. Id. The "reason to believe" requirement in this context is equivalent to probable cause, and the escape-risk requirement is not optional. Ovando v. Noem, 810 F. Supp. 3d 1209 (D. Colo. 2025).

24. In a pending case before this court, Honorable U.S. District Judge Maame Ewusi-Mensah Frimpong issued a preliminary injunction mandating ICE officers take into account the "totality of the circumstances known to the agent or officer" regarding a person's likelihood of escape before making a civil immigration arrest without a warrant. Vasquez Perdomo v. Mullin, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 16, 2026) (order granting preliminary injunction). That case requires arresting officers to thoroughly document the arrest prior to a warrant being obtained. Id.

25. Given that ICE did not present an arrest warrant for Mr. Chen at the time of arrest, ICE officers arrested him in violation of the Fourth Amendment.

**B. The Constitution Protects Noncitizens Like Petitioner from Arbitrary Arrest and Detention.**

26. The Constitution establishes due process rights for "all persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (*quoting* Zadvydas, 533 U.S. at 693 (2001)). These due process rights are both substantive and procedural.

27. First, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

28. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

29. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See* Jackson v. Indiana, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. Zadvydas, 533 U.S. at 690–92; *see also* Demore v. Kim, 538 U.S. 510 at 519–20, 527–28, 31 (2003).

30. Second, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

31. This is so even in cases where that freedom is lawfully revocable. *See* Hurd v. D.C., Gov't, 864 F.3d at 683 (*citing* Young v. Harper, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471 (1972) (same, in parole context).

32. After an initial release from custody on conditions, even a person paroled following a

conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. Morrissey, 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." Id.

33. This reasoning applies with equal if not greater force to people who were inspected and admitted by CBP on visas and then later re-detained. After all, noncitizens living in the United States, like Petitioner, have a protected liberty interest in their ongoing freedom from confinement. *See* Zadvydas, 533 U.S. at 690. And, "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

**C. Recent Changes Depriving Individuals of an Individualized Bond Hearing and further depriving individuals of a full and fair hearing.**

34. The BIA issued several precedential decisions restricting IJ jurisdiction on bonds in 2025. Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025) (holding IJs lack authority to hear bond requests or grant bond to noncitizens who are present in the United States without inspection and admission); Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) (holding noncitizens detained without a warrant while arriving in the United States are held pursuant to 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention).

35. The BIA is also incentivized to rubber-stamp bond denials by IJs regardless of the applicant's individualized circumstances, demonstrating that an adverse decision would be a certainty. Recent BIA case law has overruled IJ bond decisions, essentially pushing IJs

to deny bond, regardless of the noncitizen's particular circumstances. *See* Matter of Dobrotvorskii, 29 I&N Dec. 211 (BIA 2025) (holding that an IJ incorrectly granted bond when he determined that DHS failed to meet its burden of proof that the respondent was a flight risk due to residential discrepancies with the Petitioner's sponsor.) *See also* Matter of Akhemedov, 29 I&N Dec. 166 (BIA 2025) (holding that an IJ incorrectly granted bond when he failed to address discrepancies regarding the respondent's address.)

36. This change in case law is reflected statistically. An analysis of EOIR data demonstrates that IJs have increasingly denied bonds nationwide. IJs have denied bond 43 percent of the time in 2025, which is up from 36 percent in 2024. Denial rates continue to rise, reaching a 55 percent denial rate in the first three months of 2026. ***See*** **Exhibit C: LAIST Article Analyzing FOIA Data From the EOIR.**

37. As a result of these changes, individuals who are neither flight risks nor dangerous to society are being detained in civil detention without any notice of why they are being detained and an opportunity to present evidence.

38. Though Mr. Chen has already filed a request for a bond re-determination and such hearing is already scheduled for October 13, 2026, an adverse result is a certainty. The IJ will ignore traditional factors such as community ties, stable residence, and appearance at mandated biometrics and at his USCIS interview, and instead will deny bond, focusing solely on his relief being speculative without explaining why those other factors do not matter. Additionally, the IJ will fail to consider any alternatives to detention ("ATD") and will indicate that no amount of bond would mitigate flight risk.

39. Similarly, multiple federal courts have found that the above-referenced changes have effectively converted Immigration Court bond hearings into sham hearings. *See, e.g.,*

Mubanga v. Mullin, 837 F. Supp. 3d 1160 (S.D. Cal. 2026) (holding recent developments in the immigration court system have rendered a bond hearing an inadequate remedy because immigration judges have failed to provide constitutionally adequate bond hearings); Tiboko-Tifuh v. Noem, No. 26-CV-1215-JO-DEB, 2026 U.S. Dist. LEXIS 124136, 2026 WL 1603795 (S.D. Cal. June 4, 2026) (ordering immediate release where the IJ failed to provide a constitutionally adequate bond hearing); Perez Velasquez v. Bondi, No. 26-CV-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, 2026 WL 1042479 (S.D. Cal. Apr. 16, 2026) (*Id.*); Soriano v. Hernandez, No. 2:26-CV-00900-DGE, F.Supp.3d, 2026 U.S. Dist. LEXIS 79044, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (holding the IJ abused his discretion and ordered immediate release); Miri v. Bondi, No. 5:26-CV-00698-MEMF-MAR, 2026 U.S. Dist. LEXIS 46944, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026) (ordering immediate release where the IJ's bond hearing was constitutionally inadequate); W.T.M. v. Bondi, No. 2:25-CV-02428-RAJ-BAT, 2026 U.S. Dist. LEXIS 21315, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026) (ordering immediate release where the IJ failed to provide due process during a bond hearing).

40. These numerous decisions have all ruled that IJs, in recent months, failed to comply with habeas courts' orders to provide noncitizens with constitutionally adequate bond hearings, and ordered immediate release.

41. As a result, the IJ will certainly deny Mr. Chen's bond, and given that he will not be provided with a constitutionally adequate bond hearing, Petitioner has filed this Petition.

## STATEMENT OF FACTS

42. Mr. Chen is a native and citizen of China who entered the United States in or around 2015 when he entered with an F-1 student visa. He maintained his student visa while studying at

the University of California, Irvine, until February 8, 2023. ***See* Exhibit C: Passport Visa Page.** On July 14, 2023, he filed an application for Asylum affirmatively before USCIS and was awaiting his Asylum interview. ***See* Exhibit D: Asylum Application Receipt.**

43. Between his entry and his re-detention, Mr. Chen attended school in the U.S., created a business to support himself, and maintained community ties with companies with which he ran his business. ***See* Exhibit E: Secretary of State: Fly Woof, LLC Statement of Information & 1099-NEC Form.** He maintained a stable address and met his girlfriend who was residing with him who is in F-1 status in the U.S.

44. He did have one arrest for which charges were never pressed. On September 28, 2024, he was arrested, but the Irvine Police Department declined to press charges for lack of evidence. **Exhibit F: Irvine Police Department Letter.**

45. On September 24, 2026, he was scheduled for an Asylum interview. **Exhibit G: Asylum Interview Notice.** On the date of his interview, he was arrested in the USCIS Asylum office. He was on foot, placed in handcuffs, and was not provided a warrant at the time of his arrest.

46. Instead, the officer who arrested him indicated that ICE had a warrant, but the officer did not show it to Petitioner. In fact, Petitioner was not provided a warrant for his arrest until 4 hours AFTER his detention.

47. To this date, Mr. Chen has been detained for 11 days pending removal proceedings and will remain detained and separated from his girlfriend and community for years as his case progresses.

///

///

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fourth Amendment (Warrantless Arrest)

48. Petitioner restates and realleges all paragraphs as fully set forth herein.

49. An arrest is a seizure and must be objectively reasonable under the Fourth Amendment. Federal law authorizes ICE to make a warrantless civil immigration arrest only when officers have probable cause to believe both that the person is unlawfully present and that the person is likely to escape before a warrant can be obtained. Accordingly, when ICE lacks specific, individualized facts establishing a likelihood of escape, its warrantless arrest exceeds its statutory authority and constitutes an unreasonable seizure in violation of the Fourth Amendment.

50. Here, when Petitioner was arrested at the USCIS Asylum office, he presented evidence of his authorized stay pending his asylum application and his employment authorization document. Though distressed, he calmly presented his documents and did not attempt to flee. Because Petitioner presented his documents to officers and stayed in place while they questioned him, there was no likelihood of escape, and thus no probable cause. Therefore, ICE should have first obtained a warrant and served it to Petitioner when they arrested him. But ICE did not do this, and did not present Petitioner with any warrant when he was arrested, thus violating the Fourth Amendment. Instead, they indicated they had a warrant, never showed it to him when he was arrested, and then 4 hours AFTER his arrest, he was provided the warrant. Such a warrantless arrest does not comport with the 4th Amendment.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process (Substantive Due Process—Detention)

51. Petitioner restates and realleges all paragraphs as if fully set forth here.

52. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See* id.

53. Here, Petitioner was initially inspected and admitted in F-1 student status, and maintained said status for over 8 years. During that time, he was educated in the U.S., he had developed strong ties to the community, had started a business, and attended his required biometrics and USCIS asylum interview as required.

54. Though he attempted to comply with U.S. law and ICE's requirements to appear in court, he was detained on September 24, 2026 without a warrant.

55. The purpose of determining flight risk is to decide if an individual will appear in court. His strong community ties, stable residence, and lengthy time in the U.S. all indicate he is not a flight risk. Additionally, even though he was arrested, his charges were dropped for lack of evidence, indicating a lack of danger. When an individual is not a flight risk nor a danger, the continuation of detention violates substantive due process rights.

56. When he was detained, he was not provided a warrant, nor was he provided an opportunity to provide evidence he was not a flight risk nor danger.

57. Moreover, Petitioner's detention is punitive as it bears no "reasonable relation" to any legitimate government purpose. Id. (finding immigration detention is civil and thus

ostensibly "nonpunitive in purpose and effect"). Here, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons"—namely, to meet newly-imposed DHS quotas and transfer immigration court venue to an expedited docket. Demore, 538 U.S. at 532–33 (Kennedy, J., concurring).

58. Because Petitioner's detention has no reasonable relation to him being a flight risk nor a danger to society, his continued confinement violates the Fifth Amendment.

**COUNT THREE**
**Violation of Fifth Amendment Right to Due Process (Procedural Due Process – Detention)**

59. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

60. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding reincarceration after her release. *See* Young v. Harper, 520 U.S. 143, 146–47 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 781–82 (1973); Morrissey v. Brewer, 408 U.S. 471, 482–83 (1972); *see also* Ortega, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination).

61. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." Hernandez, 872 F.3d at 990; Zinermon, 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."). In the immigration context, for such hearings to

comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See* Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also* Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024). In Matthews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court set out a three-part balancing test for when due process was violated.

62. Under *Matthews*, the court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

63. Private Interest

a. Petitioner's private interest has been affected by the government action. Petitioner's detention without a warrant nor an opportunity to present evidence of non-flight risk violated due process. Over 8 years after his entry into the U.S., and with a pending immigration case, Respondents detained Petitioner with no justification for his detention, and no opportunity to contest his detention before a neutral adjudicator before being taken into custody.

64. The Risk of Erroneous Deprivation

a. There is a likelihood of an erroneous outcome under the current procedures, which would adversely affect the Petitioner, as he has a profound personal interest in his liberty. Petitioner has community ties that he is now being deprived of. He also poses no danger or risk to his community and is not at flight risk. Additionally,

Petitioner is invested in complying with ICE as he has a pending Asylum application. Because he received no procedural protections, the risk of erroneous deprivation is high.

65. Government's Interest

a. The government has no legitimate interest in detaining Petitioner without a warrant nor a hearing; bond hearings are conducted as a matter of course in immigration proceedings, and nothing in Petitioner's record suggested that he would abscond or endanger the community before a bond hearing could be carried out. *See, e.g.*, Jorge M.F. v. Wilkinson, 2021 WL 783561, at 3 (N.D. Cal. Mar. 1, 2021); Vargas v. Jennings, 2020 WL 5074312, at 3 (N.D. Cal. Aug. 23, 2020) ("the government's concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's strong family ties and his continued employment during the pandemic as an essential agricultural worker"). Additionally, Petitioner was detained while attending his required Asylum interview with USCIS, indicating he was complying with the proper procedures. Finally, his lack of criminal convictions indicates no danger to his community.

66. As a result, the Respondent's failure to provide an opportunity to prove he is not a flight risk or a danger violated his due process rights afforded to him by the Constitution.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's detention violates the Fourth Amendment and issue this writ of habeas corpus and order his immediate release; and/or

(4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and issue this writ of habeas corpus and order his immediate release;

(5) Issue an Order prohibiting the Respondents from transferring Petitioner from the district without the court's approval;

(6) Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;

(7) Grant any further relief this Court deems just and proper.

Respectfully submitted,
LUNXIU CHEN
By his attorney:

Dated: 10/05/2026 Signed: /s/ Mitchell H. Shen

MITCHELL H. SHEN, ESQ.
Attorney for Petitioner
Law Office of Mitchell H. Shen & Associates
617 W. 7th St., Ste. 500
Los Angeles, CA 90017
Tel. (213) 878-0333; Fax (213) 402-2169
E-mail: MshenLaw @ gmail.com

# VERIFICATION OF COMPLAINT

I, Mitchell H. Shen, Esq., state under penalty of perjury that I am the attorney for the Petitioner, LUNXIU CHEN, in the foregoing petition, and declare the facts alleged here to be true, except those made on information and belief, which I believe to be true, and further state that the sources of my information and belief are documents and information provided to me by the Petitioner and her associates and family members.

Los Angeles, CA

Dated: 10/05/2026

Signed: /s/ Mitchell H. Shen

MITCHELL H. SHEN, ESQ.
Attorney for Petitioner
Law Office of Mitchell H. Shen & Associates
617 W. 7th St., Ste. 500
Los Angeles, CA 90017
Tel. (213) 878-0333; Fax (213) 402-2169
E-mail: MshenLaw @ gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via Electronic mail/Certified Mail / Return Receipt to:

United States Attorney's Office
312 N. Spring St., Ste. 1200
Los Angeles, CA 90012;
Assistant 2241-194 US Attorney LA-CV at: USACAC.Habeas@usdoj.gov

Warden, Adelanto ICE Processing Center
10400 Rancho Road,
Adelanto, CA 92301

Ernesto Santacruz, Field Office Director
U.S. Immigration and Customs Enforcement (ICE)
10250 Rancho Road
Suite 201A
Adelanto, CA 92301

Todd M. Lyons, Acting Director
U.S. Immigration and Customs Enforcement (ICE)
500 12th St SW
Washington, DC 20536

Markwayne Mullin, Secretary
U.S. Department of Homeland Security
Washington, D.C. 20528

Todd Blanche, Acting Attorney General of the United States
950 Pennsylvania Ave., N.W. Room 45-45
Washington, DC 20530-0001; upon the date given below.

Date:10/05/2026

Signature: /s/ Mitchell H. Shen
MITCHELL H. SHEN, ESQ.
Attorney for Petitioner
Law Office of Mitchell H. Shen & Associates
617 W. 7th St., Ste. 500
Los Angeles, CA 90017
Tel (213) 878-0333; Fax (213) 402-2169
E-mail: MshenLaw @ gmail.com

**PETITION FOR WRIT OF HABEAS CORPUS**
**LUNXIU CHEN**

**Exhibit** **Document**


A. ICE Detainee Locator, Showing Petitioner's Current Location............1

B. Notice to Appear ...........................................................2-5

C. LAIST Article Analyzing FOIA Data From the EOIR .....................6-20

D. Visa Passport Page.........................................................21

E. Asylum Application Receipt...............................................22

F. Business documents:
1. Secretary of State: Fly Woof, LLC Statement of Information...........23
2. 1099-NEC Form.............................................................24

G. Irvine Police Department Letter...........................................25

H. Asylum Interview Notice....................................................26

PETITION FOR WRIT OF HABEAS CORPUS
LUNXIU CHEN

# EXHIBIT A

Official Website of the Department of Homeland Security

U.S. Immigration and Customs Enforcement

Report

< BACK TO RESULTS

# Facility Page

## Detention Information For:

**LUNXIU CHEN**
**Country of Birth:** China, Peoples Republic of
**A-Number:** 242183317

## Current Detention Facility:

ADELANTO ICE PROCESSING CENTER
10400 Rancho Road
NA
Adelanto, CA 92301
**Visitor Information:** (760) 561-6100

MORE INFORMATION >



## ERO Office Information

0

**PETITION FOR WRIT OF HABEAS CORPUS**
**LUNXIU CHEN**

# EXHIBIT B

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

DOB: 12/25/1997

Event No: SAA2609000145

In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: 403783209 FINS: 1151857313 File No: 242 183 317

In the Matter of:

Respondent: LUNXIU CHEN currently residing at:

10250 Rancho Rd Adelanto, CALIFORNIA 923012732 (760) 561-6100

(Number, street, city, state and ZIP code) (Area code and phone number)

☐ You are an arriving alien.

☐ You are an alien present in the United States who has not been admitted or paroled.

☒ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of CHINA, PEOPLES REPUBLIC OF and a citizen of CHINA, PEOPLES REPUBLIC OF;

3. You were admitted to the United States at Los Angeles (LAX), California on or about January 12, 2020, as a nonimmigrant academic student with authorization to remain for duration of status;

4. Your status was conditioned on your attendance at California State University, Los Angeles as a full-time academic student; See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

10250 RANCHO RD, STE 201A, ADELANTO, CALIFORNIA 923012237. ADELANTO DETENTION FAC. WEST

*(Complete Address of Immigration Court, including Room Number, if any)*

on October 21, 2026 at 8:30 am to show why you should not be removed from the United States based on

*(Date)* *(Time)*

the charge(s) set forth above. M 6752 MEDRANO - SDDO

*(Signature and Title of Issuing Officer)*

Date: September 24, 2026 Santa Ana, CA

*(City and State)*

EOIR — 1 of 4

## Notice to Respondent

**Alien Registration:** This Notice to Appear serves as evidence of your alien registration pursuant to INA § 262. If you are 18 years or older, failure to carry this Notice to Appear, or other evidence of alien registration as provided in 8 C.F.R. § 264.1(b), on your person at all times is a criminal offense pursuant to INA § 264(e), for which you may be subject to a criminal penalty of $5,000 and imprisonment of up to 30 days.

**Notification to the Department of Homeland Security (DHS) of Change of Address:** All aliens aged 14 years or older, and all parents and legal guardians of aliens under the age of 14, must report a change of address to U.S. Citizenship and Immigration Services, a component of DHS, within 10 days of moving, pursuant to INA § 265(a). Failure to notify DHS of your change of address is a criminal offense pursuant to INA § 266(b), for which you may be subject to a criminal penalty of $5,000 and imprisonment of up to 30 days. More information is available online at **https://www.uscis.gov/addresschange**. **This obligation is in addition to your obligation to notify the Immigration Court of your change of address**.

**Representation:** If you choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to INA §§ 240(b)(4)(A) and 292. Unless you request otherwise in writing, no hearing will be scheduled earlier than 10 days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost is provided with this notice.

**Conduct of the hearing:** At your hearing you will be given the opportunity to admit or deny any or all of the allegations in this Notice to Appear, including that you are inadmissible or deportable. You will be advised by the immigration judge of any relief from removal for which you may appear eligible, including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge. At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross-examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to INA § 208(a)(2)(B).

**Notification to the Immigration Court of Change of Address:** You are required to notify the Immigration Court, in writing, of your full mailing address and telephone number (if any). You must also immediately notify the Immigration Court whenever you change your address or telephone number during the course of this proceeding by using Form EOIR-33/IC, Change of Address/Contact Information Form. Notices of hearing will be mailed to this address. If you file a Form EOIR-33/IC with the Immigration Court, you must serve a copy on the ICE Office of the Principal Legal Advisor. If you change your address or telephone number during the course of this proceeding and do not submit Form EOIR-33/IC, the Immigration Court shall not be required to provide you with written notice of your hearing. **This obligation is in addition to your obligation to notify DHS of your change of address.**

**Failure to Appear:** If you fail to attend the hearing at the date, time, and place designated on this notice, or any date, time, or place later directed by the Immigration Court, the immigration judge shall order you removed in your absence upon determining that you were provided written notice and are removable. If you are arrested by ICE after being ordered removed in your absence by the immigration judge pursuant to INA § 240(b)(5), you will be required to pay a minimum fee of $5,000, adjusted for inflation, or a greater amount as established by the Secretary of Homeland Security.

**Mandatory Duty to Depart the United States:** If you become subject to a final order of removal as defined in 8 C.F.R. § 1241.1, you must depart the United States within 90 days of the order. If you do not depart, you may be subject to a civil penalty under INA § 274D(a) of $500 per day, adjusted for inflation, and imprisonment of up to 4 years (or 10 years if you belong to certain specified classes described in INA § 237(a)(1)(E), (2), (3), or (4)). If you are granted voluntary departure, you must comply with the terms of the voluntary departure order. If you fail to voluntarily depart within the time provided, you will be subject to a final order of removal, may be ineligible for certain immigration benefits for a period of 10 years from the date you overstayed the order, and may be subject to a civil penalty from $1,000 to $5,000, adjusted for inflation. For additional information, refer to the order granting voluntary departure, as well as INA § 240B(d).

**Sensitive Locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in INA § 239(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: ______________________________ (Signature of Respondent)

Date: ____________

______________________________ (Signature and Title of Immigration Officer)

### Certificate of Service

This Notice To Appear was served on the respondent by me on September 24, 2026, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person [ ] by certified mail, returned receipt # ________ requested [ ] by regular mail
[ ] Attached is a credible fear worksheet.
[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the MANDARIN language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

Refuse to Sign
(Signature of Respondent if Personally Served)

S 10812 DAME - Deportation Officer
(Signature and Title of officer)

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

EOIR - 3 of 4

U.S. Department of Homeland Security

Continuation Page for Form I-862

| Alien's Name | File Number | Date |
|---|---|---|
| CHEN, LUNXIU | 242 183 317<br>Event No: SAA2609000145 | 09/24/2026 |

THE SERVICE ALLEGES THAT YOU:

---

5. You failed to maintain a full-time courseload from February 8, 2023, to present.

6. You remained in the United States after your unauthorized withdrawal from California State University, Los Angeles without authorization from the US Department of Homeland Security

| Signature | Title |
|---|---|
| M 6752 MEDRANO | SDDO |

EOIR — 4 of 4





5

**PETITION FOR WRIT OF HABEAS CORPUS**
**LUNXIU CHEN**

# EXHIBIT C

Sponsored message

LMU YOUR NETWORK STARTS HERE. LEARN MORE

NEWS

# 'Deportation machine' or long-overdue enforcement? Bond denials grow sharply under Trump

Bond denials are up nationwide, but steepest at Adelanto. Immigration attorneys are suing to get an unredacted version of a November 2025 directive they say sparked the shift.

Jared Bennett is the watchdog correspondent covering immigration and law enforcement at LAist.

Published July 15, 2026 at 2:05 PM PDT




Support LAist +

...en the sharpest change in bond denials and increases in bond amounts since a nationwide shift in November 2025, ...n Review.

(Patrick T. Fallon / Getty Images)

*One year ago, Congress defunded public media. Now that we're 100% community funded, please become a sustaining member or increase your existing membership today.*

**Who gets due process? Inside the fight over immigration bond hearings at Adelanto**

24:24

Immigration bond denials have jumped sharply under the second Trump administration — nowhere more than at the Adelanto ICE detention center in Southern California. On this week's Imperfect Paradise: LAist's Jared Bennett follows the case of a 70-year-old L.A. street vendor held at Adelanto for six months, what it took for his family to get him released, and what immigration advocates say is behind the shift in bond denials.

More than a year and a half into President Donald Trump's second term, immigration attorneys critical of the administration say political pressure has transformed immigration courts across the country from neutral arbiters to a de facto "deportation machine." Supporters of stricter immigration laws say that's by design.

The clearest indication of this transformation is seen in the way immigration judges are handling requests for bond. An analysis of data from the Executive Office for Immigration Review reviewed by LAist shows that immigration judges nationwide are granting fewer bond requests. The judges denied about 43% of bond requests in 2025, up from about 36% in 2024, according to the data. The denial rate continued to rise, reaching about 55% in the first three months of 2026.

This shift is especially visible at the immigration court at Adelanto, the privately run detention facility about 90 miles northeast of downtown L.A. in San Bernardino County. Between Jan. 1, 2024, and Nov. 10, 2025, immigration judges there denied about 39% of bond requests, the data analysis shows. Since Nov. 10, 2025, Adelanto judges have denied just over 57% of bond requests.

## Recommended next reads



**Here are the top 5 immigration changes from Trump's first 100 days**

**Federal judge voices concern for immigrants at Adelanto but delays ruling on emergency relief**

**Lawyers are teaching immigrants at Adelanto how to challenge their own detentions**

Support LAist +

Nov. 10 marks an inflection point in the data that immigration attorneys based in Southern California have tied to an internal email containing new instructions to immigration judges. They've filed a lawsuit seeking unredacted versions of emails after a Freedom of Information Act request returned messages with the contents redacted.

**From:** Rooyani, Rodin (EOIR) <(b)(6)@usdoj.gov>
**Sent:** Friday, November 14, 2025 5:37 PM
**To:** Feldman, Irene (EOIR) <(b)(6)@usdoj.gov>; Kaufman, Matthew W. (EOIR) <(b)(6)@usdoj.gov>; Perry, Anne Kristina (EOIR) <(b)(6)@usdoj.gov>; Scala, Theresa M. (EOIR) <(b)(6)@usdoj.gov>; Hitesman, Jonathan W (EOIR) <(b)(6)@usdoj.gov>
**Subject:** (b)(5)

Dear ACIJs,

(b)(5)

Thank you.

Rodin Rooyani
Assistant Chief Immigration Judge
West Los Angeles Immigration Court
(T) (b)(6) (C) (b)(6)

Federal officials returned almost entirely redacted emails in response to a Freedom of Information Act request filed by advocates for immigrants.
(Department of Justice)

**From:** Scala, Theresa M. (EOIR) <(b)(6)@usdoj.gov>
**Sent:** Friday, November 14, 2025 6:46 PM
**To:** Rooyani, Rodin (EOIR) <(b)(6)@usdoj.gov>
**Subject:** RE: (b)(5)

Good evening Rodin,

(b)(5)

(b)(5)

Enjoy the weekend.

Theresa

One in a series of redacted emails returned following a Freedom of Information Act request filed by advocates for immigrants.
(Department of Justice)

When bonds are granted, the data shows the amount set in each case is thousands of

Support LAist +

re — a big change for detainees who often have limited

resources. Again, Adelanto saw an especially large shift. Nationally, the median bond amount held steady at $6,000 in 2024 and 2025 before rising to $7,500 in the first three months of 2026. The average rose from $7,801 in the final three months of 2025 to $9,211 in the first three months of 2026. At Adelanto, the median is now $10,000.

Sponsored message

As a result, people are sitting in detention while their immigration cases move through the system. The analysis of federal data concluded that favorable results of appeals decided on merits, meaning results that favor the immigrant appealing their deportation orders, are "essentially zero."

The change in the bond adjudication follows a series of instructions from the administration to immigration judges, including a September 2025 decision issued by the Board of Immigration Appeals, or BIA, to deny bond hearings to the vast majority of people who entered the country illegally.

Trump officials have argued this direction complies with federal immigration law. The Department of Justice, which houses the Executive Office For Immigration Review, responded to LAist's request for comment with an unsigned email statement.

"The Executive Office for Immigration Review is restoring integrity to the immigration adjudication system, and Board of Immigration Appeals decisions reflect straightforward interpretations of clear statutory language," the statement said, in part.

Support LAist +

"The argument that Trump 2 makes is that, for the first time in 30 years, we are applying the law as Congress wrote it," said Andrew Arthur, a former immigration judge and resident fellow at the Center for Immigration Studies, a research organization that says it advocates a "pro-immigrant, low immigration" stance.

Immigration advocates disagree. They say the current administration has abdicated the responsibility to make fair and impartial decisions about an individual's right to stay in the United States or be deported.

Stacy Tolchin, an immigration attorney based in Pasadena, is part of a group of attorneys using federal immigration court data in habeas corpus filings, which challenge the legality of continued detentions.

Sponsored message

"The laws are dictated to be fair and consider people's circumstances, how long they've been here, whether they've committed crimes, whether they pay taxes, have any family ties here," Tolchin said. "They're complicated and they're meant to consider all of these equities, and we're just losing consideration of all of that."

## Protect free press

Free press is under attack, from banning reporters from the White House to defunding public media. Help your community stay informed by supporting free and independent news from LAist today.

Support LAist +

Monthly | One time

$10 | $15 | $30 | $ other

SUPPORT NOW

Pay PayPal VISA

Secure Payment

## One case among more than 360,000




Hundreds of people protested conditions at the Adelanto Immigration and Customs Enforcement Processing Center in San Bernardino County in March.
(Libby Rainey / LAist)

In Trump's second term, his administration's wave of immigration enforcement includes more than 360,000 new immigration court cases initiated in the 2026 fiscal year, as of May, according to the Transactional Records Access Clearinghouse, a data gathering and research organization at Syracuse University.

Immigration cases can be complex and take years to fully adjudicate, even after an individual has received removal orders from an immigration judge.

---

### More LAist watchdog reporting



**LA voters could give huge power to a city role that hasn't really existed for 20 years**

Support LAist +



**Donors pour millions more into LA mayor's race, narrowing gap between Bass and Raman**

**LA prosecutors didn't know a Long Beach cop had a battery conviction. He now works for Burbank**

Sponsored message

As the volume of immigration cases has increased, so too has the volume of bond requests. Those requests more than doubled from 34,845 in 2024 to 80,130 in 2025, according to Executive Office for Immigration Review data. As the volume rose, the data shows the rate of approval declined nationally, especially at Adelanto.

## Bond at Adelanto

The data findings in this story are based on five declarations by Zabdi J. Salazar, Ph.D. candidate at UC Berkeley Law, that have been submitted to courts in habeas corpus filings. The data was published by the Executive Office for Immigration Review in response to a Freedom of Information Act request.

- Salazar found 8,555 completed bond records at Adelanto between Jan. 1, 2024 and April 30, 2026.
- Nearly half of those records, 4,110, came after Nov. 10, 2025.
- Immigration judges denied about 57% of bond requests after Nov. 10, 2025 compared to about 39% before that date.

[redacted]

He is trying to gain legal status through his family ties.

Not long ago, immigration attorneys say, people like Uriarte — someone with deep roots, no record and family in the country — would have almost certainly been released on bond. That has changed.

“He’s very hard working,” said Uriarte’s 33-year-old daughter, Karla Robles, who spoke on behalf of her father. “The community knows him as the street man around here because he’s always working, and if you catch him outside, he’s never in a bad mood. I mean, at least you’ll never notice it because he always says good morning to everyone he sees.”

Three times, Uriarte asked an immigration judge at Adelanto to release him on bond while his case moved through the courts. Three times, Judge Patrick C. Barrett said no.

Officials with the National Day Laborer Organizing Network, which is based in Los Angeles and represents day laborers and migrants, said they noticed their clients were struggling to get released on bond at the end of last year.

Sponsored message

According to immigration advocates, the practice of denying bond requests puts pressure on people to give up on fighting their cases and accept deportation.

“There's two sides of it,” said Caleb Soto, a workers’ rights director for the organizing

Support LAist +

railroaded into giving up your rights or you're let to sit there

for as long as you can stomach being in these facilities, which have horrific conditions."

Soto said he could think of at least two cases where clients gave up their cases and accepted voluntary deportation, but that outcome is probably much higher among individuals who don't have access to legal representation.

## How we got here

President Trump ran on a platform promising to deport millions of people from the U.S. Last summer, masked ICE officers were out in force in L.A. before wide-scale operations in Minneapolis and Chicago made international headlines. By then, changes were underway in immigration courts.

At the core of this change is a September 2025 ruling by the Board of Immigration Appeals, which held that people who entered the country illegally are subject to mandatory detention and that immigration judges lack authority to hold bond hearings.

"When you're talking about individuals who have entered illegally, they have already shown they are willing to violate the law to remain in the United States," said Arthur, of the Center for Immigration Studies. "In my opinion the statute clearly mandates their detention."

Prior to that, the law was interpreted to mean that detention was discretionary, meaning an immigration judge could choose to hold a bond hearing and release individuals who could prove they were not a danger to the community and were not a flight risk.

District Court Judge Sunshine S. Sykes of the Central District of California vacated the September decision this past February, but the government appealed the orders and the Ninth Circuit gave the government a quick, partial victory.

A three-judge panel blocked judges outside California's Central District, where Sykes sits, from applying her ruling until hearings can be held on the merits of the government's appeal and it can be resolved.

Mandatory detention reverses decades of precedent and violates fundamental rights to due process, according to Chloe Dillon and other immigration attorneys.

Dillon now heads San Mateo County's criminal immigration defense for the Private Defender Program. Before that, she was an immigration judge in San Francisco — a court the Trump administration effectively shut down when it fired her and other judges there.

Support LAist +

"It's not just that, they cannot get bond, not just that they will ultimately not be released," Dillon said, "but that they can't even have a hearing on whether or not they should be released, where they could present facts and say, 'This is why I think I should be released.'"

Dillon said the Executive Office for Immigration Review data shows the impact of policy changes like this.

"I don't think that it is a stretch to say that this administration has said in writing what their objectives were," said Dillon, who had a rate of approving asylum requests more than 90% of the time. "I also think that there's an argument that this is what they at least believe they were elected to — whether that is true or not — which is to deport as many people as possible."

### What the data says about immigration appeals

The data findings in this story are based on five declarations by Zabdi J. Salazar, Ph.D. candidate at UC Berkeley Law that have been submitted to courts in habeas corpus filings. The data was published by the Executive Office for Immigration Review in response to a Freedom of Information Act request. Here are the major findings:

- Very few people released on bond ultimately won their appeal to remain in the U.S. Nearly 97% of cases in 2025 were dismissed for procedural or administrative reasons or denied. Favorable outcomes, meaning decisions that favored the immigrant, Salazar found were "nearly absent."
- People held in detention are waiting significantly longer than previous years for decisions. Many are held in immigration detention facilities facing lawsuits for poor conditions. The median processing time for a detained appeal in 2024 was 111 days. In the first quarter of 2026, that processing time has nearly doubled to 216 days.

## What changed in November?

Support LAist +



In March 2026, Angelenos journeyed to the Adelanto ICE Processing Center in the Mojave Desert to protest conditions at the facility. Before leaving, they created an altar for immigrants who've recently died in custody.
(Julia Barajas / LAist)

The analysis of Executive Office for Immigration Review data shows a clear inflection point in November 2025 when bond releases became rarer in immigration courts across the country.

Attorneys with the National Day Laborer Organizing Network said they noticed this shift at Adelanto almost immediately, before the data was released.

"We were seeing from one week to the next, this jump, this complete change in how immigration courts and immigration judges were deciding and issuing bonds," said Lauren Michel Wilfong, a lawyer with the National Day Laborer Organizing Network.

In early December, the network filed a Freedom of Information Act request after hearing that immigration judges at Adelanto and other immigration courts received guidance instructing them to justify any granted bond requests to their superior in writing.

In response to the FOIA request, the Executive Office for Immigration Review turned over a series of emails from mid-November. Those emails are almost entirely redacted. The National Day Laborer Organizing Network then filed a lawsuit, with representation by Tolchin, in January seeking to compel the Trump administration to release unredacted emails. That case is yet to be decided.

Support LAist +

Wilfong said the intent of the lawsuit is to "expose the current policies and practices of immigration courts and how decisions are made."

She said they want the unredacted records because they believe "this document will show, or at least show in part, the fundamental unfairness of how these decisions are being made."

Soto said he has seen immigration judges pause bond determination hearings to seek guidance from the federal government about bond amounts.

"They essentially negotiate that," Soto said. "That just seems so bizarre, and like we're saying, describes a system that doesn't actually confer any rights to the person that is sitting there in that room."

Unlike federal and state court judges, immigration judges are employed by the Department of Justice and can be reassigned or fired. Former immigration judges said this means they are less independent than other types of judges. An August 2025 memo issued by the DOJ cautions that "independence and impartiality" was "not a license to ignore a clear directive from a proper appellate authority." The memo goes on to say if a judge's record was found to be an outlier it could indicate "systematic bias or failure to adhere to applicable law that warrants close examination and potential action."

"That's a problem," Soto said. "It's like an outside system under the DOJ that theoretically is supposed to be separate, civil, non-criminal, is really having these incredible life-altering consequences, and it has less due process than almost any other court that I've ever seen."

Arthur of the Center for Immigration Studies, who served as an immigration judge in York, Pennsylvania, said that's "a fixture, not a bug of the system."

"[Immigration judges] work for the Attorney General and the Attorney General sets the rules," said Arthur.

## District court intervention in Uriarte's case

Like others detained by ICE, Uriarte, the L.A. street vendor arrested in January, looked outside immigration court for help.

Barrett, the immigration judge at Adelanto, initially denied Uriarte's request for a bond hearing Feb. 17. He cited the September 2025 Board of Immigration Appeals opinion stating that people who entered the country illegally are not eligible for a hearing.

Support LAist +

Federal judge John D. Early ordered the immigration court to hold a bond hearing for Uriarte on Feb. 27 because his case is in the Central District of California and, therefore, subject to the partial stay on the BIA decision.

At that February hearing, Barrett determined Uriarte could not prove he was not a flight risk and denied his bond request for three reasons: That Uriarte entered the country illegally in 1992, that he worked without proper authorization and because his brother (a U.S. citizen) was not a valid sponsor.

Tolchin represented Uriarte as he filed a habeas corpus petition April 7, arguing that Barrett did not deny his bond request for valid reasons.

### How to reach me

**If you have a tip, you can reach me on Signal. My username is Jbennett.18.**

- You can follow this link to reach me there or type my username in the search bar after starting a new chat.
- For instructions on getting started with Signal, see the app's support page.
- And if you're comfortable just reaching out by email I'm at jbennett@laist.com.

Intervention like this has become common under Trump's second administration, as an unprecedented wave of habeas corpus filings — nearly 60,000 since January 2025 — has hit federal courts across the country. According to data gathered by ProPublica and analyzed by LAist, the annual average over the previous 15 years was fewer than 1,000.

Dillon, the former San Francisco immigration judge, said that while the federal data shows immigration judges are releasing fewer people on bond, the data doesn't capture cases like Uriarte's where bond releases only happened because of intervention by another court — including by judges in what she called "deep red pockets of the United States who have ruled that a bond hearing is necessary for fairness and due process."

"The data does not show the people who only got bond hearings because a federal court judge ordered them to get a bond hearing," she said, "that would otherwise not have gotten a bond hearing if it was left to the administration alone without the intervention of a federal judge who works for the federal judiciary."

Robles said her father began to contemplate ending his case and accepting deportation to Mexico shortly after his second bond request was denied.

---

**More coverage of Adelanto**

Support LAist +



**Lawsuit alleges inhumane conditions at Adelanto ICE facility**

**These Angelenos journeyed to Adelanto to protest conditions at immigrant detention centers**

**Is Adelanto's ICE detention facility a 'concentration camp'? And does it matter?**

---

"I remember that night, and he said, 'There is nothing that I have to go to, no one that I can go to. I would be stepping out of what was familiar into something unknown because it's been over 30 years, everything has changed,'" Robles said.

Early granted Uriarte's petition on April 14 and ordered Adelanto to release Uriarte or give him another bond hearing. Early said a new hearing must comply with federal law by considering the unique circumstances of Uriarte's case.

On April 21, Barrett, held another bond hearing and denied it again.

"They kept denying him for [being a] flight risk, which is ridiculous because we provided all the courts enough information and proof that we wanted to try if there was any way to adjust his status," said Robles of her father's case.

In June, Early determined Uriarte's previous bond hearings did not comply with federal law and ordered ICE to release him from Adelanto. In his decision, Early wrote that the court violated his rights to due process by relying on the fact that he came to the country illegally and worked without authorization, since that logic would lead to an automatic denial of bond in all cases, since those factors are true for anyone with an ongoing immigration case.

In his decision, Early quoted another case that found such an automatic denial "fails to comport with due process."

Early ordered Uriarte's release from detention June 2. Robles said the court date for Uriarte's immigration case has been postponed until 2028. He is required to check in with ICE until then.

"I still at times have trouble grasping the fact that he's actually released and here with us," Robles said, "because I know there're many families that unfortunately don't have the same circumstances."

## Understanding the process: How people are deported

**Administrative removal**: This process applies when someone lacks lawful status to be in the U.S. and has been convicted of an aggravated felony, a category defined under federal

Support LAist +

immigration law that covers many drug and firearms offenses.. The government can then bypass immigration courts, and often deports the person straight from prison. The person has 10 days to respond to the deportation order.

**Expedited removal:** DHS officers can quickly deport people without taking their case before an immigration judge using expedited removal. Before Trump returned to office, expedited removal was reserved for people apprehended at or near the border. Under Trump's second administration, the process has expanded nationwide.

**Immigration court review**: People without a criminal record who have been living in the U.S. make their case before an immigration judge. If the judge issues a deportation order, the person has 30 days to file an appeal. Since Trump began his second term in January 2025, most people are detained after receiving a deportation order and for the duration of their appeals.

**Read more**: What the law says about your civil rights — regardless of immigration status

**CORRECTED SEPTEMBER 19, 2026 AT 10:30 AM PDT**

*A previous version of this story gave an incorrect timeline in the rise of median bond amounts. Prior to early 2026, the average median bond was $6,000 through most of 2024 and 2025, not $7,500.*

---

One year ago, **Congress voted to defund public media,** eliminating a critical $1.7 million from our budget every year going forward. But they couldn't silence us, and we're not going anywhere. LAist is now 100% community funded and that means we're taking our future into our own hands and turning to you to keep local reporting strong.

You come to LAist because you want independent reporting and trustworthy local information. Our nonprofit newsroom doesn't answer to shareholders looking to turn a profit. Instead, **we answer to you and our communities.** We are free to follow facts wherever they lead and to hold power to account without fear or favor. Our only loyalty is to our readers and listeners and our mission: to inform, engage, and strengthen Southern California's communities.

If this story helped you, **please become a monthly member today to help sustain this mission. It just takes 1 minute to donate below.**



**Megan Garvey**

**Senior Vice President News, Editor in Chief**

# Make your tax-deductible donation today

| Monthly | One time |
|---|---|

| $10 | $15 | $30 | $ other |
|---|---|---|---|

Support LAist +

**PETITION FOR WRIT OF HABEAS CORPUS**
**LUNXIU CHEN**

# EXHIBIT D


ADMITTED
JAN 01 2016
F1
D/S
CHINA
AUG 01 2015
F1
D/S
VISA
UNITED STATES OF AMERICA
Issuing Post Name
GUANGZHOU
Control Number
20151890130090
Surname
CHEN
Given Name
LUNXIU
Visa Type/Class
R F1
Passport Number
G49760616
Sex
M
Birth Date
25DEC1997
Nationality
CHIN
Entries
M
Issue Date
11JUL2015
Expiration Date
07JUL2020
1011
Annotation
K6452565
N0013571130
UNIVERSITY OF CALIFORNIA, IRVINE
VNUSACHEN<<LUNXIU<<<<<<<<<<<<<<<<<<<<<<<<<<<
G497606161CHN9712250M2007070F1GUZ1Q5L8430252

PETITION FOR WRIT OF HABEAS CORPUS
LUNXIU CHEN

# EXHIBIT E

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

# THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | USCIS Online Account Number | Case Type |
|---|---|---|
| LGL2390034617 | | I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
| **Received Date** 07/14/2023 | **Priority Date** | **Applicant** A242 183 317 CHEN , LUNXIU |
| **Notice Date** 10/15/2025 | **Page** 1 of 1 | |

JOEL SPENCE
LAW OFFICES OF JOEL SPENCE
447 W GARVEY AVE
STE 201
MONTEREY PARK CA 91754

**Notice Type:** Annual Asylum Fee Receipt Notice
**Total Amount Received:** $100.00 U.S.

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

This notice confirms that U.S. Citizenship and Immigration Services (USCIS) received the Annual Asylum Fee for your receipt number listed above.

You can receive updates on your application by visiting uscis.gov/casestatus to get the latest status.

**If you have any questions or comments regarding this notice, call the USCIS Contact Center toll free at 800-375-5283. If you are deaf or hard of hearing, please call the Contact Center TDD at 800-767-1833. To check the status of your application, please visit our website at uscis.gov/tools or check your USCIS online account.**

We will notify you separately about any other requests you have filed.

We will notify you separately about any other cases you have filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Asylum Division
U.S. CITIZENSHIP & IMMIGRATION SVC
401 West Peachtree Street NW
Suite 2500
Atlanta, GA 30308
USCIS Contact Center: www.uscis.gov/contactcenter

PETITION FOR WRIT OF HABEAS CORPUS
LUNXIU CHEN

# EXHIBIT F

BA20252097033

B4118-9756 10/26/2025 11:22 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: BA20252097033
Date Filed: 10/26/2025

Entity Details

| | |
|---|---|
| Limited Liability Company Name | FLY WOOF LLC |
| Entity No. | 202359216181 |
| Formed In | CALIFORNIA |

Street Address of Principal Office of LLC

| | |
|---|---|
| Principal Address | 3400 COTTAGE WAY, STE G2<br>SACRAMENTO, CA 95825 |

Mailing Address of LLC

| | |
|---|---|
| Mailing Address | 3400 COTTAGE WAY, STE G2 #20700<br>SACRAMENTO, CA 95825 |
| Attention | |

Street Address of California Office of LLC

| | |
|---|---|
| Street Address of California Office | None |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
|---|---|
| + Lunxiu Chen | 2333 PENDIO<br>IRVINE, CA 92620 |

Agent for Service of Process

| | |
|---|---|
| California Registered Corporate Agent (1505) | REPUBLIC REGISTERED AGENT INC.<br>Registered Corporate 1505 Agent |

Type of Business

| | |
|---|---|
| Type of Business | Courier Service |

Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
|---|---|
| + LUNXIU Chen | 2333 PENDIO<br>IRVINE, CA 92620 |

Labor Judgment

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Lunxiu Chen* — Signature

*10/26/2025* — Date

(23)

☐ CORRECTED (if checked)

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.
7 H INC
21324 PINEHILL LN
DIAMOND BAR CA 91765
(909) 300-5688 ENHUI ZHOU

OMB No. 1545-0116

Form **1099-NEC**

(Rev. April 2025)

For calender year 2025

**Nonemployee Compensation**

FDEA2002 10/18/25

| PAYER'S TIN | RECIPIENT'S TIN |
|---|---|
| 88-4146564 | 35-2825603 |

RECIPIENT'S name
FLY WOOF LLC

Street address (including apt. no.)
3400 COTTAGE WAY, STE G2#20700

City or town, state or province, country, and ZIP or foreign postal code
SACRAMENTO CA 95825

Account number (see instructions)

1 Nonemployee compensation
$ 68021.68

2 Payer made direct sales totaling $5,000 or more of consumer products to recipient for resale ☐

3 Excess golden parachute payments
$

4 Federal income tax withheld
$

| 5 State tax withheld | 6 State/Payer's state no. | 7 State income |
|---|---|---|
| $ | | $ |
| $ | | $ |

**Copy B**
**For Recipient**

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Form **1099-NEC** (keep for your records) www.irs.gov/Form1099NEC Department of the Treasury — Internal Revenue Service

## Instructions for Recipient

You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare taxes.

If you believe you are an employee and cannot get the payer to correct this form, report the amount shown in box 1 on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. For more information, see Pub. 1779, Independent Contractor or Employee.

If you are not an employee but the amount in box 1 is not self-employment (SE) income (for example, it is income from a sporadic activity or a hobby), report the amount shown in box 1 on the "Other income" line (on schedule 1 (Form 1040).

**Recipient's taxpayer identification number (TIN).** For your protection this form may show only the last four digits of your TIN(social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)).
However, the issuer has reported your complete TIN to the IRS.

**Account number**. May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation. If the amount in this box is SE income, report it on Schedule C or F (Form 1040) if a sole proprietor, or on Form 1065 and Schedule K-1 (Form 1065) if a partnership, and the recipient/partner completes Schedule SE (Form 1040).

**Note:** If you are receiving payments on which no income, social security, and Medicare taxes are withheld, you should make estimated tax payments. See Form 1040-ES (or Form 1040-ES (NR)). Individuals must report these amounts as explained in these box 1 instructions. Corporations, fiduciaries, and partnerships must report these amounts on the appropriate line of their tax returns.

**Box 2.** If checked, consumer products totaling $5,000 or more were sold to you for resale, on a buy-sell, a deposit-commission, or other basis.
Generally, report any income from your sale of these products on Schedule C (Form 1040).

**Box 3.** Shows your total compensation of excess golden parachute payments subject to a 20% excise tax. See your tax return instructions for where to report.

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099NEC.*

**Free File Program.** Go to *www.irs.gov/FreeFile* to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

24

# EXHIBIT G

MICHAEL KENT
CHIEF OF POLICE

# IRVINE POLICE DEPARTMENT

1 Civic Center Plaza, Irvine, CA 92606 | 949-724-7000 | irvinepd.org

September 28, 2024

LUNXIU CHEN
2333 PENDIO
IRVINE, CA 92620

IPD Case #: 24-09868
Charges: PC 243(E)(1)
Officer: #677 FOSTER, S.

On 09/07/2024, you were arrested by the Irvine Police Department. The OCDA's office declined to prosecute on the above charges and no complaint will be filed with the court at this time pursuant to the provision of:

- ☐ A Lack of Corpus
- ☒ B Lack of Sufficient Evidence
- ☐ C Inadmissible Search/Seizure
- ☐ D Victim Unavailable/Decline to Testify
- ☐ E Witness Unavailable/Decline to Testify
- ☐ F Combined with other Counts/Cases
- ☐ G Interest of Justice
- ☐ H Other (indicate reason in remarks area)
- ☐ I Referred to Non-California Jurisdiction
- ☐ J Deferred for Revocation of Parole
- ☐ K Further Investigation
- ☐ L Prosecutor Pre-filing Deferral

REMARKS:

As required by the provision of the California Penal Code Section 851.6 (as amended by Stats.1975 Ch 1117) and Penal Code Section 849.5, I hereby certify that the arrest of the above listed subject will be deemed a detention only. Any reference to the action shall be deleted from the arrest records of this agency, and any such record of the action shall be referred to as a detention.

M. STAPLETON #12378
Court Liaison, Irvine Police Department

**PETITION FOR WRIT OF HABEAS CORPUS**
**LUNXIU CHEN**

# EXHIBIT H

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| Receipt Number | | Case Type |
|---|---|---|
| LGL2390034617 | | I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
| Received Date 07/14/2023 | Priority Date | Applicant A242 183 317 CHEN, LUNXIU |
| Notice Date 07/09/2026 | Page 1 of 2 | |

JOEL SPENCE
447 W GARVEY AVE
STE 201
MONTEREY PARK CA 91754

**Please come to:**
14101 Myford Rd
Tustin, CA 92780
**On (Date):** Thursday, September 24, 2026
**At (Time):** 08:30AM

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

You and your dependent family members (if any) on your Form I-589, Application for Asylum and for Withholding of Removal, are scheduled for an asylum interview on the date and time shown above. Please read this interview notice in its entirety, as it contains important information about your asylum interview.

If you fail to appear for your interview without good cause, this may result in the immediate dismissal of your asylum application or, if you are not in legal status, you may be placed in removal proceedings and your application may be referred to an immigration judge.

***I. Who should come with you to your interview?***

Only the following people may come with you to your interview:

- ***Dependents:*** All family members included in your asylum application as dependents must come to your interview.
- ***Interpreter:*** If you are not fluent in English, you must bring an interpreter to your interview. Your interpreter must:
  - Be at least 18 years old;
  - Not be your attorney or accredited representative, or witness;
  - Not be a representative or employee of your country of nationality, or, if stateless, your country of last habitual residence; and
  - Not have a pending asylum application for which he or she has not been interviewed

  If you need an interpreter and do not bring one, or if your interpreter is not competent, we will consider this a failure to appear for your interview without good cause and we will dismiss your asylum application or refer your asylum application to an immigration judge.
- ***Attorney or Accredited Representative:*** Your attorney or accredited representative may come with you to the interview.
- ***Witnesses:*** If you have a witness who will provide testimony in your case, that individual may come with you to your interview. However, we encourage your witness to provide sworn written testimony before your interview and not attend the interview. You may provide this written testimony to USCIS as additional evidence following the guidelines described in Section III below.
- ***Minors:*** If you are a minor applying for asylum by yourself, a trusted adult may come with you.

***II. What to Bring to Your Interview:***

- If available, bring a written form of identification for you and each of your family members (if any) listed as dependents on your Form I-589 indicating name, date of birth, place of birth, and nationality.
- If available, bring the original and one copy of documentary evidence of your relationship to your family members (if any) listed as dependents on your Form I-589 (such as marriage certificates, birth certificates, or affidavits).

***III. Additional Evidence:***

If you wish to submit additional evidence not previously submitted with your asylum application, you should submit it to the asylum office in writing as soon as possible or at least 7 to 10 days before the interview. You can mail the additional evidence to the asylum office or upload it via your myUSCIS account if you filed your application online. If you bring new evidence on the day of your interview, we may reschedule your interview. This reschedule

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Los Angeles Asylum Office
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 2003
Tustin GA 92781-2003

**USCIS Contact Center:** www.uscis.gov/contactcenter

26

**If this is an interview or biometrics appointment notice, please see the back of this notice for important information.**